1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   KATHLEEN VICTORIA ESPARZA,              No.  2:20-cv-0824 DB

12              Plaintiff,

13       v.                                   ORDER

14   KILOLO KIJAKAZI, Acting
     Commissioner of Social Security,[1]
15

16              Defendant.

17

18         This social security action was submitted to the court without oral argument for ruling on

19   plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment.[2]

20   Plaintiff's motion argues that the Administrative Law Judge's treatment of the medical opinion

21   evidence and plaintiff's testimony constituted error.

22   ////

23   ////

24   _____

25   [1] After the filing of this action Kilolo Kijakazi was appointed Acting Commissioner of Social
     Security and has, therefore, been substituted as the defendant.  See 42 U.S.C. § 405(g) (referring
26   to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the
     Commissioner shall, in his official capacity, be the proper defendant").

27   [2] Both parties have previously consented to Magistrate Judge jurisdiction over this action
28   pursuant to 28 U.S.C. § 636(c).  (See ECF No. 9.)

For the reasons explained below, plaintiff's motion is granted, the decision of the Commissioner of Social Security ("Commissioner") is reversed, and the matter is remanded for further proceedings.

**PROCEDURAL BACKGROUND**

In September of 2017 plaintiff filed an application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"), alleging disability beginning on June 29, 2011.  (Transcript ("Tr.") at 13, 206-07.)  Plaintiff's alleged impairments included chronic pain, chronic anxiety, chronic severe depression, and PTSD.  (Id. at 226.)  Plaintiff's application was denied initially, (id. at 103-06), and upon reconsideration.  (Id. at 109-13.)

Plaintiff requested an administrative hearing and a hearing was held before an Administrative Law Judge ("ALJ") on October 31, 2018.  (Id. at 34-68.)  Plaintiff was represented by an attorney and testified at the administrative hearing.  (Id. at 34-37.)  In a decision issued on March 18, 2019, the ALJ found that plaintiff was not disabled.  (Id. at 28.)  The ALJ entered the following findings:

> 1.  The claimant last met the insured status requirements of the Social Security Act on December 31, 2016.
>
> 2.  The claimant did not engage in substantial gainful activity during the period from her alleged onset date of June 29, 2011, through her date last insured of December 31, 2016 (20 CFR 404.1571 et seq.).
>
> 3.  Through the date last insured, the claimant had the following severe impairments: left shoulder arthritis; cervical, thoracic, and lumbar spine degenerative disc disease; bilateral carpal tunnel syndrome; bilateral hip arthritis; posttraumatic stress disorder; anxiety; and depression (20 CFR 404.1520(c)).
>
> 4.  Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).
>
> 5.  After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except the claimant could occasionally perform bilateral overhead reaching.  She could frequently reach in all other directions. The claimant could frequently balance, stoop, kneel, crouch, crawl, and climb ramps and stairs.  She could occasionally climb ladders

and scaffolds.  The claimant could not work around unprotected heights.  She should avoid concentrated exposure to moving mechanical parts. The claimant could understand, remember, and carry out simple, routine, and repetitive tasks.  She could use judgement as to simple work-related decisions.  The claimant could interact with the public occasionally.

6.  Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7.  The claimant was born [in] 1963 and was 53 years old, which is defined as an individual closely approaching advanced age, on the date last insured.  The claimant subsequently changed age category to advanced age (20 CFR 404.1563).

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.  Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

11.  The claimant was not under a disability, as defined in the Social Security Act, at any time from June 11, 2011, the alleged onset date, through December 31, 2016, the date last insured (20 CFR 404.1520(g)).

(Id. at 15-28.)

On February 25, 2020, the Appeals Council denied plaintiff's request for review of the ALJ's March 18, 2019 decision.  (Id. at 1-5.)  Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on April 22, 2020.  (ECF. No. 1.)

**LEGAL STANDARD**

"The district court reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error."  Hill v. Astrue, 698 F.3d 1153, 1158-59 (9th Cir. 2012).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to

////

3

1   support a conclusion.  Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001); Sandgathe v.

2   Chater, 108 F.3d 978, 980 (9th Cir. 1997).

3          "[A] reviewing court must consider the entire record as a whole and may not affirm

4   simply by isolating a 'specific quantum of supporting evidence.'"  Robbins v. Soc. Sec. Admin.,

5   466 F.3d 880, 882 (9th Cir. 2006) (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir.

6   1989)).  If, however, "the record considered as a whole can reasonably support either affirming or

7   reversing the Commissioner's decision, we must affirm."  McCartey v. Massanari, 298 F.3d 1072,

8   1075 (9th Cir. 2002).

9          A five-step evaluation process is used to determine whether a claimant is disabled. 20

10  C.F.R. § 404.1520; see also Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  The five-step

11  process has been summarized as follows:

12          Step one:  Is the claimant engaging in substantial gainful activity?  If
            so, the claimant is found not disabled.  If not, proceed to step two.
13

14          Step two:  Does the claimant have a "severe" impairment?  If so,
            proceed to step three.  If not, then a finding of not disabled is
15          appropriate.

16          Step three:   Does the claimant's impairment or combination of
            impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404,
17          Subpt. P, App. 1?  If so, the claimant is automatically determined
            disabled.  If not, proceed to step four.

18          Step four:  Is the claimant capable of performing his past work?  If
19          so, the claimant is not disabled. If not, proceed to step five.

20          Step five:  Does the claimant have the residual functional capacity to
            perform any other work?  If so, the claimant is not disabled.  If not,
21          the claimant is disabled.

22  Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

23          The claimant bears the burden of proof in the first four steps of the sequential evaluation

24  process.  Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987).  The Commissioner bears the burden

25  if the sequential evaluation process proceeds to step five.  Id.; Tackett v. Apfel, 180 F.3d 1094,

26  1098 (9th Cir. 1999).

27  ////

28  ////

4

1

**APPLICATION**

2      Plaintiff's pending motion argues that the ALJ committed the following two principal

3   errors: (1) the ALJ's treatment of plaintiff's testimony constituted error; and (2) the ALJ's

4   treatment of the medical opinion evidence constituted error.[3]  (Pl.'s MSJ (ECF No. 14-2) at 16-

5   26.[4])

6   **I.      Plaintiff's Testimony**

7      The Ninth Circuit has summarized the ALJ's task with respect to assessing a claimant's

8   credibility as follows:

9
10
11
12
13
14
15

> To determine whether a claimant's testimony regarding subjective
> pain or symptoms is credible, an ALJ must engage in a two-step
> analysis.  First, the ALJ must determine whether the claimant has
> presented objective medical evidence of an underlying impairment
> which could reasonably be expected to produce the pain or other
> symptoms alleged.  The claimant, however, need not show that her
> impairment could reasonably be expected to cause the severity of the
> symptom she has alleged; she need only show that it could
> reasonably have caused some degree of the symptom.  Thus, the ALJ
> may not reject subjective symptom testimony . . . simply because
> there is no showing that the impairment can reasonably produce the
> degree of symptom alleged.

16
17

> Second, if the claimant meets this first test, and there is no evidence
> of malingering, the ALJ can reject the claimant's testimony about the
> severity of her symptoms only by offering specific, clear and
> convincing reasons for doing so . . . .

18   <u>Lingenfelter v. Astrue</u>, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (citations and quotation marks

19   omitted).  "The clear and convincing standard is the most demanding required in Social Security

20   cases."  <u>Moore v. Commissioner of Social Sec. Admin.</u>, 278 F.3d 920, 924 (9th Cir. 2002).  "At

21   the same time, the ALJ is not required to believe every allegation of disabling pain, or else

22   disability benefits would be available for the asking[.]"  <u>Molina v. Astrue</u>, 674 F.3d 1104, 1112

23   (9th Cir. 2012).

24      "The ALJ must specifically identify what testimony is credible and what testimony

25   undermines the claimant's complaints."  <u>Valentine v. Commissioner Social Sec. Admin.</u>, 574

26
27
28

---

[3] The Court has reordered plaintiff's claims for sake of clarity and efficiency.

[4] Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

1  F.3d 685, 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595,

2  599 (9th Cir. 1999)).  In weighing a claimant's credibility, an ALJ may consider, among other

3  things, the "[claimant's] reputation for truthfulness, inconsistencies either in [claimant's]

4  testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work

5  record, and testimony from physicians and third parties concerning the nature, severity, and effect

6  of the symptoms of which [claimant] complains."  Thomas v. Barnhart, 278 F.3d 947, 958-59

7  (9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792

8  (9th Cir. 1997)).  If the ALJ's credibility finding is supported by substantial evidence in the

9  record, the court "may not engage in second-guessing."  Id.

10      Here, the ALJ recounted plaintiff's testimony at length as follows:

> The claimant alleged disability because of multiple complaints, including myofascial pain, exhaustion, forgetfulness, frustration, short tempered, loss of patience, and relentless pain in her lower back, bilateral hips, groin, and thighs.  In her Function Report, the claimant alleged that her ability to work was limited because of chronic pain in her shoulders, neck, back, head, hips, and knees.  She also alleged that anxiety and severe depression with complex posttraumatic stress disorder limited her ability to work.  The claimant alleged further that her medications made her drowsy.
>
> At the hearing, the claimant testified that she was unable to work because of bilateral hip problems, left shoulder arthritis, left wrist carpal tunnel, arthritis in her neck, mid-back pain, fibromyalgia, thoracic outlook syndrome, posttraumatic stress disorder, depression, and migraines.  She testified further that the pain was reduced with injections and pain medication, but it was present all the time.  The claimant testified that she had not had any surgeries and that her primary treatment was pain medications, injections, and a TENS unit.  She testified that she did not have physical therapy for her left shoulder, but she did exercises at home.  The claimant testified that her carpal tunnel was worse with keyboarding so she only used keyboard three times a year.  She testified that she used the keys on her smart phone regularly.  Concerning her back, the claimant testified that she used acupuncture, physical therapy, medication, heat and ice, and her TENS unit to manage her back pain.  She testified that she had widespread pain from her neck to her feet from the fibromyalgia.  The claimant testified that she tried medications for the fibromyalgia, but she was unable to take them because she was sensitive.  The claimant testified that she could sit and stand for 10 to 15 minutes each.  The claimant testified that she could lift a gallon of milk with pain.  She testified that she could heat up meals, do laundry, and rinse dishes, but her husband did the majority of the chores.

28  ////

6

1
2
3
4

> Concerning her mental health, the claimant testified that she was depressed all the time and she had panic attacks and nightmares at night.  She testified that she could go to the store and out to eat at a restaurant every six weeks.  The claimant testified that she visited family infrequently.  She testified that she could not concentrate.  The claimant testified that she could not wash her hair, put on clothes, do her make-up, or work in her garden.

5   (Tr. at 19.)

6   The ALJ found that plaintiff's medically determinable impairments could reasonably be

7   expected to cause the symptoms alleged, but that plaintiff's statements concerning the intensity,

8   persistence, and limiting effects of those symptoms were "not entirely consistent with the medical

9   evidence and other evidence in the record for the reason explained in [the] decision."[5]  (Id.)

10   To support this conclusion the ALJ recounted the medical evidence of record.  In doing so

11   the ALJ noted several examples of objective evidence that supported plaintiff's testimony.  For

12   example, the ALJ noted that "[p]hysical examination findings" revealed "tenderness" in several

13   areas, "muscle spasm in the right trapezius," and "limited neck and lumbar spine range of motion

14   at times."  (Id. at 20.)  Plaintiff's treatment included epidural steroid injections for cervical pain,

15   "greater trochanteric bursa injections," and "injection of the bilateral sacroiliac joints."[6]  (Id.)

16   The ALJ went on to note that "[d]uring 2013," plaintiff continued to receive pain

17   management treatment for plaintiff's "neck, thoracic spine, lower back, and hip pain."  (Id.)

18   "Physical examination findings revealed . . . moderately limited neck and back range of motion,"

19   while plaintiff's "motor function and sensation remained intact."  (Id.)  The ALJ also noted that

20   "[d]uring 2015 and 2016," examinations of plaintiff found "mildly antalgic gait with tenderness

21
22
23
24
25
26

[5] "ALJs routinely include this statement in their written findings as an introduction to the ALJ's credibility determination" before "identify[ing] what parts of the claimant's testimony were not credible and why."  Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1103 (9th Cir. 2014).  "The use of this generic language is not itself reversible error . . . but it inverts the responsibility of an ALJ, which is first to determine the medical impairments of a claimant based on the record and the claimant's credible symptom testimony and only then to determine the claimant's RFC.  By rejecting a claimant's subjective symptoms 'to the extent they are inconsistent with the above residual functional capacity assessment,' the agency indicates that it is failing properly to incorporate a claimant's testimony regarding subjective symptoms and pain into the RFC finding, as it is required to do."  Trevizo, 871 F.3d at 679 n.6.

27
28

[6] "[W]e doubt that epidural steroid shots to the neck and lower back qualify as 'conservative' medical treatment."  Garrison v. Colvin, 759 F.3d 995, 1015, n. 20 (9th Cir. 2014).

7

1    over her greater trochanteric bursae," "reduced neck, thoracic, and lumbar spine range of motion

2    and a positive straight leg raise[.]"  (Id. at 21.)

3         With respect to plaintiff's mental impairments, the ALJ acknowledged that in 2015

4    plaintiff "established with a psychiatrist for medication management of her longstanding anxiety

5    and depression symptoms," with mental status examinations finding plaintiff to be "tearful, sad,

6    and anxious[.]"  (Id. at 22.)  The ALJ also acknowledged that plaintiff "presented for therapy

7    starting in 2015, for major depressive disorder, posttraumatic stress disorder, and anxiety," with

8    mental status examinations finding plaintiff to be "tearful and anxious, however, she was

9    orientated with normal speech."  (Id.)

10        The ALJ ultimately concluded that plaintiff's alleged mental and physical impairments

11   were "not consistent with the . . . medical evidence of record[.]"  (Tr. at 20, 22.)  It is true that the

12   ALJ's discussion of the medical evidence included instances of normal findings.  However, the

13   ALJ did not explain how any of the evidence was in fact inconsistent with plaintiff's testimony.

14   Nor is any such inconsistency apparent.  Instead, the ALJ simply recounted evidence of abnormal

15   and normal findings, which could be done for almost every claimant.

16        Moreover, "after a claimant produces objective medical evidence of an underlying

17   impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of

18   medical evidence to fully corroborate the alleged severity" of the symptoms.  Burch v. Barnhart,

19   400 F.3d 676, 680 (9th Cir. 2005); see also Putz v. Astrue, 371 Fed. Appx. 801, 802-03 (9th Cir.

20   2010) ("Putz need not present objective medical evidence to demonstrate the severity of her

21   fatigue."); Perez v. Astrue, 247 Fed. Appx. 931, 936 (9th Cir. 2007) ("That the degree of Perez's

22   subjective complaints were not corroborated by the objective clinical findings in the ALJ's view

23   was of no legal moment because pain is inherently an individual phenomenon."); Bunnell v.

24   Sullivan, 947 F.2d 341, 347 (9th Cir. 1991) ("If an adjudicator could reject a claim for disability

25   simply because a claimant fails to produce medical evidence supporting the severity of the pain,

26   there would be no reason for an adjudicator to consider anything other than medical findings.").

27   ////

28   ////

1    For the reasons stated above, the Court finds that the ALJ failed to offer a clear and

2    convincing reason for rejecting plaintiff's testimony.  Accordingly, plaintiff is entitled to

3    summary judgment on this claim.

4    **CONCLUSION**

5    After having found error, "'[t]he decision whether to remand a case for additional

6    evidence, or simply to award benefits[,] is within the discretion of the court.'"[7]  Trevizo v.

7    Berryhill, 871 F.3d 664, 682 (9th Cir. 2017) (quoting Sprague v. Bowen, 812 F.2d 1226, 1232

8    (9th Cir. 1987)).  A case may be remanded under the "credit-as-true" rule for an award of benefits

9    where:

> (1) the record has been fully developed and further administrative
> proceedings would serve no useful purpose; (2) the ALJ has failed to
> provide legally sufficient reasons for rejecting evidence, whether
> claimant testimony or medical opinion; and (3) if the improperly
> discredited evidence were credited as true, the ALJ would be
> required to find the claimant disabled on remand.

14   Garrison v. Colvin, 759 F.3d 995, 1020 (9th Cir. 2014).

15   Even where all the conditions for the "credit-as-true" rule are met, the court retains

16   "flexibility to remand for further proceedings when the record as a whole creates serious doubt as

17   to whether the claimant is, in fact, disabled within the meaning of the Social Security Act."  Id. at

18   1021; see also Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court

19   concludes that further administrative proceedings would serve no useful purpose, it may not

20   remand with a direction to provide benefits."); Treichler v. Commissioner of Social Sec. Admin.,

21   775 F.3d 1090, 1105 (9th Cir. 2014) ("Where . . . an ALJ makes a legal error, but the record is

22   uncertain and ambiguous, the proper approach is to remand the case to the agency.").

23

24   [7] Having already identified an error requiring remand, in light of plaintiff's request for remand for
     further hearing, and review of the record the Court finds it unnecessary to reach plaintiff's

25   remaining claim of error.  See Janovich v. Colvin, No. 2:13-cv-0096 DAD, 2014 WL 4370673, at
     *7 (E.D. Cal. Sept. 2, 2014) ("In light of the analysis and conclusions set forth above, the court

26   need not address plaintiff's remaining claims of error."); Manning v. Colvin, No. CV 13-4853
     DFM, 2014 WL 2002213, at *2 (C.D. Cal. May 15, 2014) ("Because the Court finds that the

27   decision of the ALJ must be reversed on the basis of the stooping limitation, the Court need not
     address Plaintiff's remaining contentions.").

28

1    Here, plaintiff argues that this matter should be remanded for further proceedings and the

2 Court agrees.  (Pl.'s MSJ (ECF No. 14-2) at 25-26.)

3    Accordingly, IT IS HEREBY ORDERED that:

4    1.  Plaintiff's motion for summary judgment (ECF No. 14) is granted;

5    2.  Defendant's cross-motion for summary judgment (ECF No. 20) is denied;

6    3.  The Commissioner's decision is reversed;

7    4.  This matter is remanded for further proceedings consistent with the order; and

8    5.  The Clerk of the Court shall enter judgment for plaintiff and close this case.

9 Dated:  February 14, 2022

10

11

12                                           DEBORAH BARNES
                                             UNITED STATES MAGISTRATE JUDGE
13

14

15

16

17

18 DLB:6
   DB\orders\orders.soc sec\esparza0824.ord
19

20

21

22

23

24

25

26

27

28

10